# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3199 | **DATE** | 5/2/2001 |
| **CASE TITLE** | CHARLES M. MCDONALD vs. VILLAGE OF WINNETKA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to May 14, 2001 at 9:30 a.m. Enter Memorandum Opinion and Order. Defendants motions to dismiss are denied, and defendants' motion to strike is denied.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 03 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES M. MCDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 3199 |
| v. ) | |
| ) | Judge John W. Darrah |
| VILLAGE OF WINNETKA, WINNETKA FIRE ) | |
| CHIEF RONALD J. COLPAERT, SCOTT SMITH, ) | |
| and ILLINOIS STATE FIRE MARSHAL SPECIAL ) | |
| AGENT MITCHELL S. KUSHNER, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
MAY 0 3 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles M. McDonald (McDonald), filed suit against defendants, alleging deprivation of his civil rights pursuant to 42 U.S.C. § 1983 and intentional and reckless infliction of emotional distress. Before this Court are the defendants' Motions to Dismiss and/or Strike Plaintiff's Amended Complaint.

## I. BACKGROUND

In the spring of 1999, McDonald hired a company to conduct lead abatement work in a home he recently purchased. On May 10, 1999, a fire started from a spark while the lead abatement workers were working in the home, and a call to 911 was placed.

At approximately 4:09 p.m., the Winnetka Fire Department (WFD) arrived at the home. Fire Chief Colpaert (Colpaert) commanded the firefighters' efforts and was assisted by Deputy Fire Chief Smith (Smith). The fire was eventually extinguished, and the firefighters removed smoldering and burning cellulose insulation from the home. The WFD left the fire scene at approximately 8:27 p.m.

On May 12, 1999, another fire was reported at the same McDonald's home. The WFD

arrived at the home at approximately 4:20 p.m. and extinguished the fire. Colpaert, with Smith's assistance, commanded the fire scene. The WFD left the fire scene at approximately 12:35 a.m. the next morning.

Subsequently, the Village of Winnetka (Village) began an investigation of the cause and origin of the May 12th fire. The investigation included the use of trained dog "sniffer" to detect for accelerants. The dog noticed no accelerants. Samples of the home were taken and tested for accelerants; none were found. The May 12th fire was classified as an arson fire, and the Village referred the investigation to the Federal Bureau of Alcohol, Tobacco, and Firearms (ATF). The ATF subsequently asked the Justice Department to open a federal grand jury investigation to determine who set the fire.

In March 2000, McDonald caused information to be presented to the federal investigators showing that the May 12th fire was not an arson fire but, rather, was caused by a large quantity of smoldering cellulose insulation located along the path of the May 10th fire. After the federal agents investigated the home for several hours, the Department of Justice notified McDonald that the federal investigation into the May 12th fire would be closed.

McDonald filed an amended complaint alleging three counts. Count I alleges a violation of 42 U.S.C. § 1983; Count II alleges intentional or reckless infliction of emotional distress; and Count III alleges liability of the Village of Winnetka pursuant to 42 U.S.C. § 1983. McDonald alleges that the fire lacked evidence of arson and that the defendants intentionally and recklessly ignored substantial evidence that indicated the May 12th fire was a result of a "rekindle" from the cellulose insulation that the WFD failed to remove from the May 10th fire. He also alleges that the defendants dismissed the possibility of a rekindle and falsely stated that rekindles do not occur after 48 hours

and that the May 12th fire originated in an area of the house not involved in the May 10th fire.

McDonald alleges that the classification of the fire as an arson was made to cast blame on McDonald and avert blame from the defendants. He further alleges that the defendants knew that when a federal investigation was started, McDonald's friends, relatives, and associates would be contacted, that newspapers would report on the investigation, injuring McDonald's reputation, and that McDonald would spend a great deal of time and money defending against a baseless claim of arson.

II. ANALYSIS

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint are taken as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). The complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Count I of McDonald's amended complaint alleges a violation of 42 U.S.C. § 1983. It alleges that defendants, while acting under the color of state law, treated McDonald differently from other Village residents whose homes and businesses have experienced fires. McDonald alleges that the "differential treatment was motivated by an illegitimate animus – it was a spiteful effort to 'get' him." Defendants argue that McDonald fails to state a claim for a "class of one" equal protection violation under § 1983.

The Supreme Court has held that an equal protection claim may be brought by a person who

3

is a member of a "'class of one' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*Olech*); *see also Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000) (*Hilton*).

A plaintiff claiming an equal protection violation in a "class of one" case must establish two elements. First, he must allege that he was singled out for differential treatment. *Olech*, 528 U.S. at 565. The differential treatment can consist of being treated worse than others who were similarly situated, being treated the same as or worse than others who are situated worse than the plaintiff, or being treated differently than some established norm. *See Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995) (*Esmail*). Second, the plaintiff must allege that the differential treatment was irrational or arbitrary. *Olech*, 528 U.S. at 565. In other words, the cause of the differential treatment must be a 'totally illegitimate animus toward the plaintiff by the defendant.' *Albiero v. City of Kankakee*, __ F.3d __, __ (7th Cir. 2001) (citation omitted).

In the instant case, McDonald has alleged that he was singled out for differential treatment than other individuals in the Village whose homes and residences have experienced fires. He has also alleged that the differential treatment "was motivated by an illegitimate animus – it was a spiteful effort to 'get' him." These allegations are sufficient to state a claim for relief under an equal protection analysis. *See Olech*, 528 U.S. at 565.

Defendants also argue that McDonald's equal protection claim should be dismissed because his equal protection claim is nothing more than a state law defamation claim, and his alleged injuries are only to his reputation. As such, he must plead a "stigma-plus" pursuant to *Paul v. Davis*, 424 U.S. 693 (1976).

4

Defendants admit that *Paul v. Davis* applies to constitutional torts under the due process clause and asks this court to extend the "stigma-plus" requirement for a cause of action under that constitutional provision to a "class of one" equal protection claim. Defendants cite no case law to support such extension nor does any principal of jurisprudence support defendants' argument.

To the contrary, the Seventh Circuit has acknowledged that equal protection claims are separate and distinct from due process claims. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 1999) (equal protection claim does not require loss of liberty/property interest as does due process claim); *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1995) (district court incorrectly extended due process injury requirement to all § 1983 claims); *Triad Assoc., Inc. v. Robinson*, 10 F.3d 492, 500 (7th Cir. 1993) ("governmental disregard of the fundamental dictate of equal treatment is the beginning and end of the equal protection inquiry"). Accordingly, plaintiff is not required to plead a "stigma-plus" pursuant to *Paul v. Davis* in his equal protection claim.

Defendant, Illinois State Fire Marshal Special Agent Mitchell Kushner (Kushner), argues that McDonald's equal protection claim against him should be dismissed because the complaint fails to "tie Kushner" to the case.

In the amended complaint, McDonald alleges that Kushner's use of a dog to "sniff" for accelerants to which the dog failed to identify any accelerants. He also alleges that "defendants" knew or had reason to know that the May 10th fire was not adequately extinguished and that the cause of the May 12th fire was smoldering insulation. Furthermore, "defendants" undertook little or no analysis or investigation to support the reports of the May 12th fire. Kushner wrote a report on the May 12th fire. The amended complaint continues to name "defendants" in further allegations without specifying which defendants the allegation is against.

5

A reading of the amended complaint in its entirety demonstrates that McDonald has "tied Kushner" to the case. The complaint identifies at least part of Kushner's role in the investigation -- the alleged problems with the investigation, the actions taken based on the report, and the claims resulting from the report and actions of the defendants. Accordingly, Kushner's motion to dismiss McDonald's equal protection claim against him is denied.

Next, the individual defendants argue that they are entitled to qualified immunity.

If a public official raises the defense of qualified immunity, the plaintiff bears the burden of showing: (1) whether he has asserted a violation of a constitutional right and (2) whether the applicable constitutional standards were clearly established at the time the alleged violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000) (*Jacobs*). If the rights were not clearly established at the time of the violation, the official is immune from suit, and the claim may be dismissed. *Jacobs*, 215 F.3d at 766.

A clearly established right is established if the plaintiff can demonstrate that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (*Anderson*). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful ... but is to say that in light of the pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 639-40.

The so-called "class of one" equal protection claims are cases "in which a governmental body treated individuals differently who were identically situated in all respects rationally related to the government's mission," *Indiana State Teacher's Ass'n v. Board of School Commissioners*, 101 F.3d 1179, 1181 (7th Cir. 1996). Such claims have been recognized in this circuit since at least 1995.

6

*See Esmail*, 53 F.3d at 179. Moreover, McDonald's allegations that the defendants falsely accused him of arson, intentionally conducted an incomplete investigation of these allegations, intentionally caused McDonald financial, professional, and emotional harm, and engaged in this conduct to cover-up and deflect attention from defendants' ineptitude and place the fault on McDonald fall within the conduct prohibited by the equal protection clause. *See Levenstein v. Salafsky*, 164 F.3d 345, 352 (7th Cir. 1998) (plaintiff's allegations that defendants' conduct arose from vindictiveness defendants felt toward plaintiff as a result of his decision to investigate possible financial mismanagement fell within selective prosecutions prohibited by the equal protection clause); *Esmail*, 53 F.3d at 179. Accepting the facts presented in McDonald's amended complaint, and the inferences fairly drawn from those facts, the relevant constitutional standards were well established in 1999; and defendants' Motion to Dismiss based on qualified immunity is denied.

Defendants also argue that McDonald's allegations are insufficient because he "lumps together" all defendants in the allegations as opposed to indicating which of the defendants participated in what conduct.

"Complaints need not plead facts. [citations omitted] It is enough to specify the wrong done and leave details to later steps, such as motions for more definite statement." *Palmer v. Board of Educ. of Community Unit School Dist. 201-U*, 46 F.3d 682, 688 (7th Cir. 1995) (*Palmer*).

Here, McDonald has pleaded sufficient details of the alleged wrong doing by the three named defendants to place the defendants on notice of the allegations and the details of each defendant's actions can be clarified at later steps in the litigation. *See Palmer*, 46 F.3d at 688. Furthermore, McDonald need not plead with particularity pursuant to Federal Rule of Civil Procedure 9(b), as argued by defendants, because McDonald has not plead fraud or mistake. *See* Fed. R. Civ. P. 9(b).

7

The Village also argues that it cannot be held vicariously liable under § 1983 for the acts of Fire Chief Colpaert.

A municipality is not vicariously liable in litigation under § 1983 unless the deprivation of the constitutional right was caused by a municipal policy or custom. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 694 (1978). The existence of a municipal policy or custom may be established in one of three ways: proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority. *Kujawski v. Board of Commissioners of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999) (*Kujawski*). An individual's status as a final policymaker is a question of state or local law. *Kujawski*, 183 F.3d at 737.

Here, McDonald alleges that Colpaert is a "person with final policymaking authority on fire-related matters for the Village of Winnetka." He also argues that "[i]t was Fire Chief Colpaert's decision to intentionally or recklessly conceal the cause or origin of the May 12, 1999, fire, falsely or recklessly accuse McDonald ...."

McDonald alleges in the amended complaint that Colpaert is a person with final policymaking authority on fire-related matters for the Village. In his response to defendants' Motion to Dismiss, plaintiff argues that Colpaert has final policymaking authority pursuant to the Winnetka Village Code and/or through the inference that the Village Manager and Village Council had a custom of not reviewing or intervening in Colpaert's decisions. At this stage of the litigation, McDonald has sufficiently plead Colpaert had final policymaking authority. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) (finding plaintiff sufficiently plead policy or custom through conclusory statements buttressed by facts alleging wrongdoing by the City); *Kujawski*, 183

F.3d at 740 (record established a reasonable inference that authority was delegated); *Anderson v. Village of Oswego*, 109 F.Supp.2d 930, 935 (N.D.Ill. 2000) (allegation that individual had final policymaking authority sufficient to withstand motion to dismiss).

Defendants also argue that McDonald's claims for intentional infliction of emotional distress (IIED) should be dismissed because: (1) the alleged conduct was not extreme and outrageous; (2) the alleged emotional distress was not severe; and (3) the alleged actions are immunized under Illinois law.

To state a claim in Illinois for IIED, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended or knew that there was a high probability that his conduct would cause severe emotional distress; (3) severe emotional distress was suffered by the plaintiff; and (4) the defendant's outrageous conduct was the actual and proximate cause of the plaintiff's emotional distress. *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (*Davis*). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency...." *Davis*, 360 N.E.2d at 767. The extreme and outrageous nature of the alleged conduct may arise not by what was actually done but from a defendant whose position gives him actual or apparent power to damage the plaintiff's interests. *McGrath v. Fahey*, 533 N.E.2d 806, 810 (Ill. 1989). In addition, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Davis*, 360 N.E.2d at 765.

In the instant case, McDonald alleges that the defendants intentionally ignored the true cause of the May 12th fire, falsely called the May 12th fire an arson, attempted to frame McDonald for the alleged arson, and brought in the ATF in order to hide evidence of the defendants' ineptitude.

9

He also alleges that he experienced severe emotional distress for approximately 10 months in that he had back pains, night-time teeth grinding, distraction from work, stress, worry, public embarrassment, and damage to his reputation. These allegations sufficiently plead a claim for IIED. *See Treece v. Village of Naperville*, 903 F.Supp. 1251, 1259-60 (N.D.Ill. 1995) (allegations that police attempted to elicit a bribe and then fabricated testimony about plaintiff in an indictment sufficient to state a claim of IIED); *Jones v. City of Chicago*, 639 F.Supp. 146, 153 (N.D.Ill. 1986) (police officers alleged misconduct which lead to plaintiff's arrest and imprisonment sufficient for IIED claim).

Defendants also argue that McDonald's claims for IIED should be dismissed because they are based on defamatory statements made by public officials, and statements made by public officials within the scope of their authority are absolutely privileged. McDonald is not claiming defamation, and the allegations in support of his IIED claims include more than statements made by defendants within the scope of their authority. Therefore, defendants are not absolutely immune from McDonald's IIED claims.

Last, defendants move to strike McDonald's claims for punitive damages for municipal liability and the IIED claims. McDonald has not sought punitive damages for these claims. Accordingly, defendants' Motion to Strike is denied.

For the reasons stated above, defendants' Motions to Dismiss are denied, and defendants' Motion to Strike is denied.

Dated: May 2, 2001

JOHN W. DARRAH
United States District Judge

10